ROCK–A–BYE BABY, INC., Plaintiff,

v.

DEX PRODUCTS, INC., Defendant.

No. 94 C 1781.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 22, 1994.

Robert Edward Wagner, Alan L. Barry, Linda A. Kuczma, Bradley F. Rademaker, Wallenstein, Wagner & Hattis, Ltd., Chicago, IL, for plaintiff.

Ronald B. Coolley, Michael Joseph Blankstein, Arnold, White & Durkee, Chicago, IL, Chris Scott Graham, Berliner, Cohen & Biagini, Scott R. Hover–Smoot, Berliner Cohen, San Jose, CA, Timothy Huber, Brien Kirk, Michael H. Kalkstein, Graham & James, Palo Alto, CA, for defendant.

1. Registration Number 1,171,469.

2. Registration Number 1,184,949.

*MEMORANDUM OPINION AND ORDER*

NORDBERG, District Judge.

Rock–ABye Baby, Inc. ("RABB") sued Dex Products, Inc. ("DEX") in an eight count complaint, alleging trademark infringement, unfair competition, false advertisement, commercial disparagement, deceptive trade practices, dilution of Plaintiff's protected marks, and consumer fraud. Plaintiff relies on federal law, state statutory law, and common law. DEX has moved for summary judgment on RABB's entire complaint.

## I. BACKGROUND

RABB manufactures and sells, in interstate commerce, several products relating to infant care. Among RABB's products is the Rock–A–Bye Bear, which is a stuffed bear containing a computer microchip which emits intrauterine sounds. The Rock–A–Bye Bear is designed to soothe babies with the presumably familiar sounds of the womb. Rock–A–Bye Bear is a registered trademark belonging to RABB.[1] RABB also maintains a registered trademark on the phrase "Rock–A–Bye" for "stuffed toys containing an intrauterine sound of a new born baby recorded on an integrated circuit chip."[2] RABB has sold and advertised the Rock–A–Bye Bear and other products under the "Rock–A–Bye" trademark since 1979.

DEX also sells, in interstate commerce, a stuffed bear which emits "recorded sounds of the womb," called the "Mommy Bear." In addition, DEX sells an infant support pillow called "Prop–A–Bye Baby." DEX's trademark application for Prop–A–Bye Baby was approved December 3, 1993, but a registration had yet to issue at the time this suit was filed.[3] DEX's introduction of the Mommy Bear and its use of the phrase Prop–A–Bye Baby were subsequent to the presence of Rock–A–Bye Bear on the market and RABB's use of Rock–A–Bye as a trademark.

RABB alleges that Mommy Bear is confusingly similar in name and appearance to RABB's Rock–A–Bye Bear in violation of federal and Illinois law and that DEX's

3. DEX asserts that a registration, number 1,842,-389, was issued on June 28, 1994.

Prop–A–Bye Baby mark is confusingly similar to RABB's Rock–A–Bye mark and RABB's other marks which include the term Rock–A–Bye.[4] DEX now moves for summary judgment. The Court will refer to additional facts as they become relevant to its discussion of the issues presented.

## II. ANALYSIS

### A. Standard

Summary judgment is appropriate against a party who fails to make a sufficient showing to establish the existence of an essential element to its case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying the portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). All the evidence submitted must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

Once a properly supported motion for summary judgment has been filed, the non-moving party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). An issue of fact is genuine only if a jury could reasonably return a verdict for the non-moving party. *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Only facts that might affect the outcome of the case are material. *Id.* Therefore, if the evidence provided by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11.

### B. Trade Dress Infringement

■ RABB alleges that DEX's Mommy Bear and its trade dress are similar enough to the Rock–A–Bye Bear and its trade dress to cause confusion among the public in violation of common law and the Lanham Act, 15 U.S.C. § 1125(a). That section provides:

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents to nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes he or she is likely to be damaged by such an act.

15 U.S.C. § 1125(a). It is well settled in our circuit that, in order to prevail on a claim of trade dress infringement, the plaintiff must prove that its trade dress is protectible and that its trade dress was infringed. *Badger Meter, Inc. v. Grinnell Corp.,* 13 F.3d 1145, 1151 (7th Cir.1994).

■ Trade dress refers to the total image of a product, including size, shape, color combinations, graphics, packaging and label. *Id.* Trade dress is protectible if it is inherently distinctive or that it has acquired a secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992). A district court in the Seventh Circuit will not reach the question of likelihood of confusion, until it is satisfied that the claimed trade dress is sufficiently distinctive to be protectible. *Spraying Systems Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir.1992) (quoting

---

**4.** These marks are the Rock–A–Bye Bear already mentioned and the Rock–A–Bye Bunny, registration number 1,703,475.

*Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 610 (7th Cir.1986)).

Neither party discusses whether Rock–A–Bye Bear's trade dress is distinctive or has secondary meaning. DEX bases its argument for summary judgment exclusively on its argument that no confusion between the Rock–A–Bye Bear and Mommy Bear trade dress is possible, "even assuming that Rock–A–Bye Bear's overall trade dress is distinctive and has acquired strong secondary meaning." (Mem. in Supp. of Def.'s Mot. for Summ.J., p. 8.) Because the Court has received no argument on this issue, the Court will assume, for the purposes of this motion only, that Rock–A–Bye Bear's trade dress is protectible.

■■■ Trade dress is infringed if the similarity of the trade dress of the defendant to that of the plaintiff is likely to cause confusion on the part of consumers as to the source of the goods. *Badger Meter, Inc.,* 13 F.3d at 1151. Courts evaluate the likelihood of confusion in trademark infringement claims by considering the following seven factors:

(1) the similarity between the trade dress in appearance and suggestion;

(2) similarity of the products;

(3) area and manner of concurrent use;

(4) degree of care likely to be exercised by consumers;

(5) strength of complainant's trade dress;

(6) actual confusion; and

(7) intent of defendant "to palm off his product as that of another."

*Badger Meter, Inc.,* 13 F.3d at 1152. The question of the likelihood of confusion is one of fact. *AHP Subsidiary Holding Company v. Stuart Hale Company,* 1 F.3d 611, 616 (7th Cir.1993). "Accordingly, a motion for summary judgment in a trademark infringe-

ment case must be approached with great caution." *Id.*

■■■ RABB does not discuss the seven factors above with respect to trade dress. As a result, the Court is without argument regarding the third and fourth factors. The Court will only consider the factors raised in RABB's motion and supporting briefs.

### 1. Similarity of the Products and the Trade Dresses

DEX argues that the products and their respective trade dresses are so dissimilar that this Court need not even examine the other factors. DEX relies heavily on a California case, *Alchemy II, Inc. v. Yes! Entertainment Corp.,* 844 F.Supp. 560 (C.D.Cal. 1994), where the court granted summary judgment to the defendant based on its conclusion that no reasonable jury could conclude that the goods (also teddy bears) were substantially similar. *Alchemy II,* 844 F.Supp. at 569–71. DEX encourages the Court to perform a side by side examination of the two bears and their respective packaging and to conclude that no jury could reasonably conclude that a likelihood of confusion exists.

■■■ A side by side comparison, however, is not always an appropriate procedure. *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 275 (7th Cir.1976);[5] *McDonald's Corp. v. Gunvill,* 441 F.Supp. 71, 73 (N.D.Ill.1977), *aff'd,* 622 F.2d 592 (7th Cir.1980). The question presented is whether the defendant's trade dress is likely to confuse the public. Therefore, the two products and their packaging must be compared in light of what occurs in the marketplace. *James Burrough Ltd.,* 540 F.2d at 275. A judicial side by side comparison is probative only to the extent it represents consumers' perception of the products. *Computer Care v. Service Systems Enterprises, Inc.,* 982

---

5. Although *James Burrough Ltd.* is a trademark, rather than a trade dress, case, it is relevant to the Court's analysis of trade dress. The issue of a likelihood of confusion is common to trademark and trade dress infringement, as well as to claims of unfair competition. *Spraying Systems Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir.1992). In its discussion of both the trademark and trade dress infringement claims in this case, this Court will rely on prior courts' analysis of the likelihood of confusion issue irrespective of its source as a trademark or trade dress case. This is a common practice. *See, e.g., Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 937 (7th Cir. 1989) (a trade dress case) (citing *International Kennel Club of Chicago v. Mighty Star, Inc.,* 846 F.2d 1079, 1087 (7th Cir.1988) (a trademark case)).

F.2d 1063 (7th Cir.1992); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 937 (7th Cir.1989), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990).

DEX has not conclusively shown that the Rock–A–Bye Bear and the Mommy Bear are so dissimilar as to preclude consumer confusion regarding the source or affiliation of Mommy Bear. DEX exhaustively lists all the differences between the two products and their packaging in its brief and its Statement of Material Facts as to which there is no genuine dispute, including such characteristics as the length of the fur and the size of the eyes for each bear and the different color scheme of the respective packaging. Many of these differences are only cognizable by careful and detailed comparison of the products and packaging. Even if a side by side comparison is appropriate, this level of scrutiny is unlike anything which occurs in the marketplace.[6] Side by side comparisons can accentuate minor differences between products. *See International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir.1988). DEX's focus on minute details does not address the Court's duty to examine the "perceptual gestalt" of the trade dress, *see Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431 (7th Cir.1985), *cert. denied*, 475 U.S. 1147, 106 S.Ct. 1801, 90 L.Ed.2d 346 (1986), or put another way, the "total concept and feel" emitted to consumers by the products. *Nike, Inc. v. "Just Did It" Enterprises*, 6 F.3d 1225, 1230 (7th Cir.1993) (citations omitted). The Court must compare the products and their trade dress against the backdrop of the marketplace, *International Kennel Club*, 846 F.2d at 1088, and with regard to the overall appearance of the products. *Scandia Down*, 772 F.2d at 1431.

The products are generally similar. Each is a stuffed bear which emits a soothing sound. A few specific similarities exist in the products' trade dress as well. Both bears are packaged in a rectangular box. Each box, on its back side, has a picture of the contained bear in a sitting position with the sound device between the bears' legs. Each box also promotes its product through endorsements, although the endorsements on the Mommy Bear package are clearly fictional while the endorsements on the Rock–A–Bye Bear package appear to be from actual customers.

In sum, the Court notes that the two products are somewhat similar in overall appearance. As the scrutiny of the products becomes more intense, differences become more apparent.[7] The balance of these conclusions is that the first two factors, the similarity of the two products and their respective trade dress, do not militate strongly for or against a conclusion that a likelihood of confusion is present.[8]

2. Strength of Complainant's Trade Dress

Strength of trade dress relates in part to its uniqueness. *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 937–38 (7th Cir.1989). The more fanciful, as opposed to generic, the complainant's trade dress is, the stronger it is. To the extent the product itself is part of the trade dress, its existence as a teddy bear, surely among the most generic of toys, is evidence of a relatively weak trade dress. RABB does not present any evidence regard-

---

**6.** There is even some confusion as to whether Rock–A–Bye Bear and Mommy Bear are sold in the same shops. In his affidavit, Jason Clute, President of DEX, stated that the products are to be sold in different stores. Clute Dec., ¶ 8. Mr. Clute, however, admitted that this is not "100% true" in his deposition. Clute Dep., p. 91. Andrew Horn, President of RABB states that DEX and RABB are competitors and sell products to common retailers, but does not state that Rock–A–Bye Bear and Mommy Bear are carried by any retailers simultaneously. The extent of the overlap in the distribution networks for the two products is unclear from this record.

**7.** This truism is undoubtedly one of the reasons why the Seventh Circuit considers factor number four, the degree of care likely to be exercised by consumers, an important part of this analysis. As RABB did not address this element in its motion or supporting memoranda, the Court is without argument on this factor.

**8.** RABB also alleges that DEX is liable for using the term "audio pacifier" to describe Mommy Bear. Given the Court's ruling on this motion, it is unnecessary to discuss the status of the "audio pacifier" claim except to say it remains an open issue to be addressed at trial.

ing the strength of its trade dress. DEX, on the other hand, names three other child-related products on the market that include a heartbeat sound intended to soothe a child. Def.'s Stmt. of Mat. Facts., ¶ 14. RABB questions whether these products are intended to soothe children and insists that Rock–A–Bye Bear does not make a heartbeat sound.[9] Pl.'s Resp. to Def.'s Stmt. of Mat. Facts, ¶ 13. In light of these issues of fact regarding the uniqueness of Rock–A–Bye Bear's trade dress, the strength of the trade dress does not support a conclusion of law that no likelihood of confusion exists.

### 3. Actual Confusion

■ RABB submits the declaration of Rita Mott, a RABB employee, to demonstrate actual confusion in the minds of consumers between RABB products and DEX products. Ms. Mott states that she has received calls from individuals who have mistaken Mommy Bear for Rock–A–Bye Bear.

Mott Dec., ¶¶ 4–5.

DEX attacks this declaration as hearsay and thereby inadmissible. Statements regarding the state of mind of a declarant, here the unknown callers, are generally admissible in the Seventh Circuit under these circumstances. In *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir.1988), the court held that the testimony of employees that they had received letters, calls, and comments expressing confusion between the two similarly named parties in that lawsuit was admissible and probative of the existence of a likelihood of confusion. *Id.* at 1090; *see Imperial Service Systems, Inc. v. ISS International Service System, Inc.*, 701 F.Supp. 655, 659

(N.D.Ill.1988) (relying on Fed.R.Evid. 803(3) to exclude similar statements as a reflection of existing state of mind). *But see Smith Fiberglass Products, Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1331 n. 2 (7th Cir.1993) (citing, without comment, the rejection of the existing state of mind exclusion as it applies to similar statements).

Although admissible, the statements by Ms. Mott are not entitled to great weight. The declarants are unknown, and there sincerity and truthfulness cannot be gauged. Furthermore, the number of inquiries fielded by Ms. Mott regarding Mommy Bear is unknown. The three calls she specifically reports are, by themselves, insignificant. Therefore, the evidence of actual confusion is slight. However, as this Court is obligated to consider all facts in the light most favorable to the plaintiff, and as DEX provides no evidence of a lack of actual confusion, the Court finds that a material issue of fact regarding the existence of actual confusion exists.

### 4. Intent to "Palm Off"

DEX, the movant, makes no reference to the seventh factor except to respond to RABB's allegations of "palming off."[10] RABB alleges that DEX intends to "palm off" the Mommy Bear as related to RABB products, and provides the deposition of DEX's President, Jason Clute, to do so. Mr. Clute admits that he was inspired to the idea of placing a sound box in a stuffed bear by the Rock–A–Bye Bear and that he attempted to become a RABB licensee. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ.J., Ex. 1, pp. 42, 203. These points do not demonstrate that DEX intended to pass its products off as those of RABB, it only shows that RABB

---

**9.** RABB's president, Andrew Horn, states that Rock–A–Bye Bear contains an internal sound unit that emits an "actual recording of intrauterine sounds." Horn Dec., ¶ 5. In an advertisement for its Rock–A–Bye Baby Decorator Pillows, RABB states, "NEW! Decorator baby pillows featuring the original Rock–A–Bye Baby sound, the first original recorded intrauterine sound found to calm and quiet newborn infants. Containing the actual maternal pulse sounds as heard by a baby in the womb prior to birth." Apparently, RABB finds a distinction between heartbeat sounds and pulse sounds.

**10.** DEX even goes so far as to argue that the defendant's intent is not relevant to a finding of the likelihood of confusion. Inexplicably, DEX cites a Third Circuit case to support this proposition. This is a Seventh Circuit Court and the seven factor test for likelihood of confusion, including an evaluation of the defendant's intent, has been standard fare here for many years. *See Helene Curtis Industries, Inc. v. Church and Dwight Co., Inc.*, 560 F.2d 1325, 1330 (7th Cir. 1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).

was in the market first, an undisputed fact, and that RABB's product inspired a competitor, an irrelevant fact.

Although the palming off factor therefore does not, on this record, advance RABB's claim, neither does it advance DEX's argument that no genuine issues of fact regarding a likelihood of confusion exist.

In sum, DEX has not identified, in the current record, an absence of material fact concerning the existence of a likelihood of confusion with regard to the trade dress of the parties' products. Questions still exist regarding the degree of actual or likely confusion regarding the "origin, sponsorship, or approval" of Mommy Bear, if any, experienced by consumers when faced with that product, the strength of DEX's trade dress, and DEX's intent with respect to "palming off." Therefore, this Court does not grant summary judgment on this count.

## C. Trademark Infringement

█ RABB also alleges trademark infringement pursuant to common law and the Lanham Act, 15 U.S.C. § 1114, complaining that DEX's Prop–A–Bye Baby mark is confusingly similar to RABB's marks Rock–A–Bye, Rock–A–Bye Bear, and Rock–A–Bye Bunny as well as its trade name Rock–A–Bye Baby. The elements of a cause of action for trademark infringement are the same as those for trade dress infringement. To prevail at trial, a plaintiff must demonstrate that its trademark is protectible and that it was infringed. *Smith Fiberglass Products, Inc. v. Ameron, Inc.,* 7 F.3d 1327, 1329 (7th Cir. 1993).

DEX argues that RABB's marks are not protectible because they are generic and that DEX has not infringed on RABB's marks because DEX's Prop–A–Bye Baby is not at all similar to RABB's marks.

DEX argues that the only commonality between its Prop–A–Bye Baby and RABB's marks is the "A–Bye" portion, which DEX argues is generic. "A generic term is one that is commonly used as the name of a kind

of goods." *Forum Corp. of North America v. Forum Ltd.,* 903 F.2d 434, 444 (7th Cir. 1990) (quoting *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 935 (7th Cir.1986)). DEX provides the names of three products and seven businesses that use some variation of "A–Bye" to describe themselves. Clute Dec., ¶¶ 18, 19.

RABB responds by disclaiming any attempt to enforce a trademark on "A–Bye" by itself. RABB alleges that Prop–A–Bye Baby is confusingly similar to its trade name Rock–A–Bye Baby as well as a violation of its registered marks that include the term Rock–A–Bye. RABB relies on the phonetic and visual similarity of the two phrases to assert a likelihood of confusion. The Court must consider the marks taken as a whole. *Scandia Down Corp.,* 772 F.2d at 1431; *James Burrough Ltd.* 540 F.2d at 275. DEX makes no other attempt to challenge the protectibility of RABB's marks or its trade name, Rock–A–Bye Baby. Therefore, the Court will again assume, for the purposes of this motion only, that RABB's marks and trade name are protectible.

The analysis of the likelihood of confusion between the marks is the same as the analysis regarding likelihood of confusion for trade dress. The same seven factor test applies. *AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 615 (7th Cir.1993). Again, DEX ignores the seven factor test, although it does provide some evidence that relates to the factors. The Court will consider this evidence, keeping in mind that the weight accorded to each factor may vary from case to case and that no single factor is determinative. *Id.*

### 1. Similarity of the Marks

DEX argues that the marks "are not at all similar" and again provides no evidence of consumer reaction to the marks, relying on the Court to engage in a side by side comparison. However, the phonetic and visual similarity of Prop–A–Bye Baby and the Rock–A–Bye marks [11] cannot reasonably be denied. The sound of a mark is a relevant

---

11. The similarity is greatest with Rock–A–Bye Baby, which RABB asserts is its protectible trade name. The phonetic and visual similarity with other Rock–A–Bye marks, such as Bear, Bunny and the unmodified Rock–A–Bye are not insignificant.

consideration when determining the likelihood of confusion. *Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434, 441 (7th Cir.1990). As the Court must consider the marks in their entirety, the Court finds that enough similarity between the marks exists to preclude a holding that there is no issue of material fact with regard to the similarity of the marks.

### 2. Similarity of the Products

DEX argues that the products are dissimilar because its Prop–A–Bye Baby is a pillow, while RABB's products are toys. RABB provides evidence that it has applied its Rock–A–Bye Baby trade name, with various suffixes, to a wide variety of products, including "Shield–A–Burn," "Carta–Kid," "Comfy Wipe Warmer," "Baby's First Year," "My Potty Game" and others. The Court therefore finds that RABB's characterization of the products as "infant care products" is more accurate. This is not to say the Court considers the product lines to be identical, but the Court is unwilling to hold that no genuine issue of material fact exists regarding the similarity of the products.

### 3. Other Factors

The analysis relevant to the remaining five factors is not materially different than the analysis performed with respect to the claim of infringement of RABB's trade dress. DEX again provides no evidence regarding the area and manner of concurrent use of the marks or the degree of care likely to be used by consumers. The evidence that DEX provides regarding the strength of RABB's marks, actual confusion, and its intent in using Prop–A–Bye Baby has already been discussed in relation to RABB's trade dress claim. The remaining factors do not materially persuade the Court one way or the other in regard to a likelihood of confusion among consumers.

DEX also argues that the United States Trademark Office ("USTO") has implicitly found no confusion between Prop–A–Bye Baby and RABB's marks because DEX's mark has been registered. The seven factor test set out by the Seventh Circuit is not exhaustive, *see Nike, Inc.*, 6 F.3d at 1228, so the Court will consider this argument.

The issue of likelihood of confusion in a registration proceeding is not identical to that issue in an infringement action. In a proceeding opposing a registration, "likelihood of confusion is determined only as to the registrability of the applicant's mark exactly as shown in the application and only as to the goods listed, regardless of actual usage." *Jim Beam Brands Co. v. Beamish & Crawford*, 937 F.2d 729, 734 (2d Cir.1991) (quoting 2 J. McCarthy, *Trademarks and Unfair Competition* § 32:31, at 737–38 (2d ed. 1984)) (holding that defendant was not collaterally estopped from arguing no likelihood of confusion in an infringement case even though the registration of its mark had been cancelled in an earlier proceeding). As this Court has already noted, in an infringement action, the inquiry is much broader, encompassing not only the actual usage, but considering the trade dress, proximity of the parties' marks and other factors which make up the "perceptual gestalt." Therefore, the fact that the USTO granted DEX a registered trademark on its Prop–A–Bye Baby mark is not sufficient to state that there is no genuine issue of material fact with respect to a likelihood of confusion.

In sum, DEX has failed to persuade this Court that there is no likelihood of confusion between its Prop–A–Bye Baby mark and RABB's various marks. This is particularly true in light of test set down by the Seventh Circuit in *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir.1976). In order to win summary judgment on an infringement suit, a defendant must show that there is no likelihood that consumers generally familiar with RABB's marks would, upon seeing only DEX's mark, to believe Prop–A–Bye Baby was in some way related to, or connected or affiliated with, or sponsored by RABB. *Id.* at 274. Summary judgment must be approached cautiously with respect to fact bound inquiries. As genuine issues of material fact exist with regard to many, if not all, of the seven factors used to determine whether a likelihood of confusion exists, DEX's motion for summary judgment with respect to Counts I, II

and VIII, alleging trademark and trade dress infringement, are DENIED.

### D. False Advertising

RABB alleges that DEX has falsely advertised its Mommy Bear and Prop–A–Bye Baby products in three instances. First, RABB alleges that DEX falsely advertised that Prop–A–Bye Baby is a registered trademark. Second, RABB alleges that DEX falsely advertised that Mommy Bear was "clinically proven." Third, RABB argues that DEX falsely advertised that the Mommy Bear sound box contains "actual recorded sounds of the womb."

■ In order to prevail on a claim for false advertisement under the Lanham Act, a plaintiff must show that the defendant's advertisement is (1) false and misleading, (2) actually or likely to deceive a substantial segment of their audience, (3) material in their effects on purchasing decisions, (4) for goods that entered interstate commerce, and (5) actually or likely to injure the plaintiff. *Truck Components, Inc. v. K–H Corp.,* 776 F.Supp. 405, 408 (N.D.Ill.1991).

■ DEX claims it is entitled to judgment as a matter of law on this claim on each of RABB's three allegations. First, DEX argues that its advertisement that Prop–A–Bye Baby was a registered trademark, although technically false, does not entitle RABB to relief because DEX's statement has nothing to do with the nature of DEX's product. The Lanham Act, on which RABB relies, provides that false or misleading representations of fact which "in commercial advertising or promotion, misrepresent the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" are a source of civil liability. 15 U.S.C. § 1125. As the existence of a registered trademark is not relevant to the "nature, characteristics, qualities, or geographic origin" of the Prop–A–Bye Baby pillow, RABB's claim under the Lanham Act cannot succeed based on a false representation that Prop–A–Bye Baby was a registered mark.

Second, DEX argues that its advertising Mommy Bear as "clinically proven" was not false. To support this statement, DEX provides information filed under seal. Pending a further hearing on under seal submissions, suffice it to say that there are a number of genuine issues of material fact, so that summary judgment on RABB's false advertising claim is inappropriate.

■ DEX also argues that its advertisement stating that Mommy Bear contains "actual recorded sounds of the womb" cannot provide the basis for a false advertising claim. Again, DEX relies on the literature which accompanied the compact disc from which the sound used in Mommy Bear was taken. That literature provides, "[t]he recording ... was taken near the head of the fetus in a woman eight months pregnant." Supp. Clute Dec., Ex. A. Although this evidence shows that the producer of the sound claims it is intrauterine, it does not, by itself, demonstrate that no question of material fact exists with regard to the truth or falsity of DEX's advertisement. DEX, in the context of a false advertising claim, essentially asks this Court to blindly assume the truthfulness and reliability of the advertisement of some third party producer of sounds. In light of the procedural posture of this motion, the Court will not do so.

For the foregoing reasons, DEX's motion for summary judgment with respect to Count III, alleging false advertisement, is DENIED.

### E. Commercial Disparagement

DEX moves for summary judgment based on the absence of any evidence in the record establishing that DEX disparaged RABB or RABB's products. As such they have moved for summary judgement and the burden shifts to RABB to point to specific parts of the record that establish at least a genuine issue of material fact as to its right to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

RABB responds, in conclusory fashion, as follows:

RABB is aware of evidence that DEX has made statements that are disparaging to RABB and its product trade names.

These statements were made in DEX's promotion of its Mommy Bear at a trade show in Dallas Texas in 1993. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., p. 10. RABB has not gone beyond the pleadings, as required by *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). RABB provides *no* evidence of any disparaging statements.[12] The Court will give RABB two weeks to file supplemental information on this issue and DEX two weeks to respond. The Court will rule by mail.

### F. Deceptive Trade Practices

■ RABB alleges a violation of the Uniform Deceptive Trade Practices Act, codified in Illinois at 815 ILCS 510/1—510/7. The Act provides, in part:

A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

. . . .

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

815 ILCS 510/2 (Smith–Hurd 1993). Likelihood of confusion has the same meaning in the Illinois Deceptive Trade Practices Act as it does in trademark infringement cases. *McGraw–Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1174 (7th Cir.1986); *M–F–G Corp. v. ERMA Corp.*, 626 F.Supp. 699, 706 (N.D.Ill.1985), *aff'd*, 817 F.2d 410 (7th Cir.1987). As such, DEX relies on its arguments presented in connection with the trademark and trade dress claims. As this Court has already ruled that there are genu-

ine issues of material fact with respect to the likelihood of confusion with respect to the trademark and trade dress claims, summary judgment is also inappropriate for this count. DEX's motion for summary judgment on Count V, alleging deceptive trade practices, is DENIED.

### G. Dilution

■ RABB alleges that DEX violated Illinois' Anti–Dilution statute, which provides:

Every person ... adopting and using a mark, trade name, label, or form of advertisement may proceed by suit ... to enjoin subsequent use by another of the same or any similar mark ... if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark ... notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services. . . .

765 ILCS 1035/15 (Smith–Hurd 1993). A genuine issue of material fact concerning the likelihood of confusion element of a trademark infringement action also constitutes a genuine issue of material fact with respect to an anti-dilution claim under Illinois law. *McGraw–Edison*, 787 F.2d at 1174. As this Court has already held that genuine issues of material fact exist with respect to the likelihood of confusion between the parties' trademarks and trade dresses, summary judgment is inappropriate on the anti-dilution claim as well. DEX's motion for summary judgment on Count VI, alleging dilution in violation of Illinois law is DENIED.

### H. Consumer Fraud

■ RABB alleges that DEX has committed consumer fraud by "unfair competition, deceptive acts and practices ... with respect to its promotion, offer to sell, and sales of products." RABB seeks to recover under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. The parties agree that likelihood of confusion is an element of a consum-

---

12. RABB refers the Court to the deposition testimony of DEX's president, Mr. Clute. RABB alleges that Mr. Clute does not deny that disparaging statements may have been made. RABB does not, however, provide the appropriate pages of Mr. Clute's deposition transcript to this Court. This is not sufficient.

**714**

er fraud case. *See* Reply Br. in Supp. of Def.'s Mot. for Summ. J., p. 12; Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ.J., p. 12. As this Court has already noted, genuine issues of material fact exist regarding whether there is a likelihood of confusion between the parties' trademarks, products, and trade dresses. Therefore, DEX's motion for summary judgment on count VII, alleging consumer fraud, is DENIED.

## III. CONCLUSION

For the foregoing reasons, DEX's motion for summary judgment with respect to Count IV, alleging commercial disparagement, is deferred pending further submissions and DENIED with respect to all other counts.