**Michael T. DUGAN, II, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 93–1844.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1993.

Decided March 9, 1994.

Kevin McShane (argued), McShane & Gordon, Indianapolis, IN, for petitioner-appellant.

Larry A. Mackey, Asst. U.S. Atty. (argued), Indianapolis, IN, for respondent-appellee.

Before LAY,* COFFEY and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

Michael T. Dugan, II, appeals the denial of his motion to vacate, set aside, or correct his sentence. We affirm.

## BACKGROUND

Michael Dugan, II, while serving as an Indiana state trial judge, was indicted in December 1988 for racketeering, mail fraud, wire fraud, extortion, bribery, tax fraud, and tax conspiracy charges. The evidence presented established that Dugan appointed his friends as receivers and appraisers in cases pending before him and thereafter "demanded" cash kickbacks for every receivership and appraisal fee Dugan authorized. In addition to the kickback arrangements, the evidence demonstrated that Dugan extorted payments from executives of Underwriters National Assurance Company ("Underwriters"), a troubled insurance company which was the subject of a rehabilitation lawsuit pending in Dugan's court for ten years. Dugan used his supervisory powers to select or approve Underwriters's chairmen of the boards of trustees and directors and the company's presidents, marketing managers, and legal counsel, made clear in *United States v. Dugan*, 902 F.2d 585, 587 (7th Cir. 1990), where we stated that "[h]e also fixed the compensation levels for these individuals, drafted their employment or agency contracts, [and] ... fired executives when they displeased him[.]" Robert Eichholtz, Dugan's close friend and Underwriters's chairman of the boards of directors and of the trustees, was Dugan's co-conspirator. Eichholtz stated to David Phipps and James Riggs, two Underwriters executives, that he

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

was paying Dugan to keep his position and that they would also be required to make contributions or payments if they wished to retain their positions. Over a nine year period, Dugan extorted $190,000 from Underwriters executives by inflating their salaries in order that they might make kickback payments to him to retain their jobs.

Nancy Eichholtz, a government witness, testified that her husband Robert Eichholtz (recently deceased) made monthly payments of $1,000 to Dugan, and that her husband had told her that others were also giving Dugan money. Neither Dugan nor the prosecution questioned Mrs. Eichholtz about two agreements she had made with the prosecution to testify against Dugan.[1] Mrs. Eichholtz's agreements with the United States Attorney's office were included in the government's exhibits and its admissibility was stipulated to by both parties before trial.

The jury convicted Dugan of racketeering, extortion, and mail, wire, and tax fraud and the court sentenced him to eighteen years in prison. As part of his sentence, Dugan was also ordered to make restitution and to forfeit certain property interests derived from his racketeering activity. Dugan appealed, "argu[ing] that he was denied his right to confront witnesses guaranteed by the sixth amendment because crucial statements of an unavailable co-conspirator were admitted. Specifically, he maintains that statements of Robert Eichholtz, who died prior to trial, were crucial to the case against him and lacked adequate indicia of reliability." *Dugan*, 902 F.2d at 589. He also contended that the evidence presented at trial was insufficient to support his conviction for mail fraud because the government, as required under *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987),

failed to establish that his scheme resulted in the loss of property, expectation of a property right, or other concrete economic interest. This court affirmed his convictions after concluding that because Mr. Eichholtz was Dugan's co-conspirator, Mr. Eichholtz's statements were admissible under the co-conspirator provisions of Federal Rule of Evidence 801(d)(2)(E) and that "where a statement is admissible under Rule 801(d)(2)(E), there can be no Confrontation Clause violation." *Dugan*, 902 F.2d at 590 (quoting *United States v. Shoffner*, 826 F.2d 619, 630 n. 14 (7th Cir.), *cert. denied Strange v. United States*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987)). We also rejected Dugan's sufficiency of the evidence argument because the evidence was "overwhelming" that Dugan's actions resulted in the loss of property, expectation of a property right, or other concrete economic interest. *Dugan*, 902 F.2d at 591.[2]

On March 23, 1992, Dugan filed a motion pursuant to 28 U.S.C. § 2255 and requested an evidentiary hearing on the motion. Dugan alleged *inter alia* 1) that the prosecution failed to disclose the agreements it had reached with Nancy Eichholtz, in contravention of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and 2) that he had received ineffective assistance of trial counsel because of his attorney's failure to object to the introduction of hearsay statements, letters from Mr. Eichholtz, and failure to cross-examine Mrs. Eichholtz regarding her agreement with the government. Dugan failed to raise either of these claims on direct appeal. The district court after review found that the prosecution had fully disclosed its agreements with Mrs. Eichholtz. With regard to Dugan's ineffectiveness allegation, the court found that "considering the

---

1. On April 18, 1988, Mrs. Eichholtz appeared before a grand jury investigating Dugan and made false statements. Subsequently Mrs. Eichholtz and the United States Attorney's office agreed that Mrs. Eichholtz would be given immunity in return for her promise to "be forthright and honest with investigating officials and [to] answer all questions candidly and completely and [to] provide all documents and records requested of [her]." After reaching this first agreement (Government Exhibit 807, dated May 13, 1988), Mrs. Eichholtz again appeared before the

grand jury investigating Dugan. Following her second grand jury appearance, she and the United States Attorney's office agreed that she would not be prosecuted for her previous false testimony if she successfully completed a pre-trial diversion program. The second agreement, Government Exhibit 808, was signed on May 5, 1989.

2. For a more extensive recitation of the facts underlying Dugan's convictions, see *id.* at 586–88.

particular nature of the specifications of ineffectiveness ... Dugan's claim of ineffective assistance of trial counsel could have, and should have been raised on [direct] appeal." Notwithstanding Dugan's waiver for failure to raise his ineffective assistance of counsel allegations on direct appeal, the district judge addressed and rejected Dugan's claims on the merits, concluding that "by every measure known to this judge, Dugan's trial was eminently fair; it certainly was not flawed by deficient performance of counsel, especially in light of the fact that Dugan, himself a lawyer and a judge, was present and fully participated in his own defense throughout the trial." The court denied Dugan's § 2255 motion and refused his request for an evidentiary hearing.

## ISSUES

Dugan raises three issues on review: 1) whether the district court erroneously determined that the prosecutor's disclosure of its agreement with Mrs. Eichholtz was sufficient and therefore not in violation of *Brady;* 2) whether the court erroneously resolved his ineffective assistance of counsel claim; and 3) whether the court erred in denying him an evidentiary hearing on his claims.

## DISCUSSION

### I. Alleged *Brady* Violation

Prior to trial, Dugan's attorney filed a *Brady* motion and the court ordered that the government provide Dugan with "[a]ny agreements, written or otherwise, or understandings by the government with any witnesses relating to their testimony." Dugan alleges the government failed to timely disclose that it had reached an agreement with Nancy Eichholtz. He contends that it was not possible for him to raise this issue on direct appeal because he did not learn of the existence of the agreement until after the decision in his direct appeal.

■ Dugan's argument that the government failed to disclose its agreement with Eichholtz's wife fails because the record reflects that prior to trial the government submitted to Dugan and his counsel Government Exhibits 807 and 808, the two documents which embody the government's agreement

with Mrs. Eichholtz. In fact, upon questioning Dugan conceded to the district court that "Government's Exhibits 807 and 808 amount to a full disclosure of the Government's relationship with [Mrs. Eichholtz]." Dugan and his trial attorney acknowledged the existence of Exhibits 807 and 808 when, prior to trial, they each signed a document entitled "Stipulations to Government Exhibits" which read in part that "[t]he parties hereby stipulate and agree that the below-numbered Government Exhibits are admissible for all purposes: ... 800–825[,] 828–833[,] 850A–850F[.]" Dugan's stipulation that Exhibits 800–825, including Exhibits 807 and 808, were admissible in evidence, clearly establishes that the *Brady* violation argument is without merit. To the extent that Dugan continues to contend that prior to trial he was not aware of the government's agreement with Mrs. Eichholtz, we remind Dugan that the district court resolved this factual question against Dugan, and "[i]t is not the function of this court to reweigh the evidence or to substitute its judgment for that of the trier of fact." *United States v. Wisniewski,* 741 F.2d 138, 144 (7th Cir.1984). We agree with the district judge's observation that "[i]t is beyond credulity that Dugan was either unaware of the contents of Exhibit 807 and 808 or indifferent, for whatever reason, to their contents.... Dugan is bound by his stipulation." We reject Dugan's argument that the government failed to timely disclose the agreement it formed with Mrs. Eichholtz.

### II. Ineffective Assistance of Counsel

■ Now on appeal Dugan for the first time contends that his trial counsel was ineffective. We set forth the requirements for establishing ineffective assistance of counsel in *United States v. Delgado,* 936 F.2d 303, 310 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992), wherein we stated:

"The defendant bears a heavy burden in establishing an ineffective assistance of counsel claim. He must show (1) that the attorney's representation fell below an objective standard of reasonableness (performance prong), *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80

L.Ed.2d 674 (1984), and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong), *id.* at 694, 104 S.Ct. at 2068.... With regard to the performance prong, the defendant must identify the specific acts or omissions of counsel that formed the basis for his claim of ineffective assistance. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. The court 'must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' *Id.* The court's scrutiny of counsel's performance must be conducted with a high degree of deference and without the distorting effects of hindsight. *Id.* at 698, 104 S.Ct. at 2065; *United States v. Sherwood,* 770 F.2d 650, 655 (7th Cir.1985). As to the prejudice prong of the inquiry, a 'reasonable probability' of a different result means a 'probability sufficient to undermine confidence in the outcome [of the trial].' *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068."

*Delgado,* 936 F.2d at 310 (quoting *United States v. Moya–Gomez,* 860 F.2d 706, 763–64 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989)). Specifically, Dugan claims his trial counsel was ineffective for:

1) failing to object to Government Exhibits 111–A and 112, letters from Robert Eichholtz to Dugan;

2–4) failing to object to hearsay statements attributed to Robert Eichholtz by various witnesses;

5) failing to cross-examine Nancy Eichholtz regarding agreements between herself and the government;

6) failing to object to hearsay statements attributed to Robert Eichholtz by other witnesses; and

7) failing to object to hearsay statements introduced through the testimony of Charles Traylor.

Because Dugan failed to raise his trial counsel's alleged ineffectiveness at the earliest feasible opportunity (on direct appeal), and

for the reasons given below, he is barred from raising the issue now.

"[A] federal prisoner's failure to raise a constitutional issue on direct appeal bars raising it in a subsequent § 2255 motion unless the defendant can show cause for and actual prejudice resulting from the error of which he complained." *United States v. Kovic,* 830 F.2d 680, 683 (7th Cir.1987) (footnote omitted), *cert. denied,* 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988) (citing *Norris v. United States,* 687 F.2d 899 (7th Cir. 1982)). Dugan had separate trial and appellate attorneys, so there is no reason why Dugan's appellate attorney could not have raised an ineffective assistance of trial counsel claim on Dugan's direct appeal. Moreover, the particular factual bases for Dugan's allegations of ineffective assistance—trial counsel's alleged failure to object to alleged hearsay, failure to cross-examine, and so forth—could have been presented to and resolved by this court on direct appeal. Because Dugan failed to present his ineffective assistance of counsel claim at the earliest feasible opportunity, Dugan is procedurally barred from seeking relief under § 2255. *See United States v. Taglia,* 922 F.2d 413 (7th Cir.), *cert. denied McDonnell v. United States,* 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). We agree with the trial judge's ruling.

### III. Evidentiary Hearing

■ Finally, Dugan contends the court committed error in denying his motion for an evidentiary hearing. We disagree, for as we have explained above, the record most eloquently displays that the movant, Dugan, was not entitled to relief, as there was no *Brady* violation and as Dugan could have, but did not, present his ineffective assistance of counsel claim on direct appeal. As we stated in *Delgado,* 936 F.2d at 309, " 'a judge should dismiss the petition without a hearing if it plainly appears from the facts of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.' *Aleman v. United States,* 878 F.2d 1009, 1012 (7th Cir.1989) (quoting Rule 4(b) of the Rules Governing Section 2255 Proceedings)." An evidentiary hearing under the circumstances in this case would

serve only to "overburden [the] judicial system [by addressing] another needlessly repetitious and wasteful collateral attack. Some place, somewhere, somehow, we must put an end to this repetitious and meritless litigation if we are to be able to attempt to render justice in a timely fashion to those with meritorious claims." *Olson v. United States*, 989 F.2d 229, 233 (7th Cir.) (quoting *United States v. Kovic*, 830 F.2d 680, 692 (7th Cir. 1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988)), *cert. denied*, —— U.S. ——, 114 S.Ct. 258, 126 L.Ed.2d 210 (1993). Because Dugan's *Brady* and ineffective assistance claims were without merit, plainly he was not entitled to have his sentence vacated, set aside, or corrected under § 2255. We hold the court did not err in denying Dugan's motion for an evidentiary hearing.

## CONCLUSION

Because the government timely disclosed its agreement with its witness and because Dugan failed to raise his ineffective assistance of counsel claim at the earliest feasible opportunity, we affirm the district court's denial of Dugan's § 2255 motion.

AFFIRMED.