**Kevin Darnell WILSON, Movant,**

v.

**UNITED STATES of America, Respondent.**

No. 2:01–CV–20–RL.

United States District Court, N.D. Indiana, Hammond Division.

May 14, 2001.

Kevin Darmell Wilson, Jr., pro se.

Clarence Butler, Jr., U.S. Attorney's Office, Dyer, IN, for United States.

### ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion Under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed by Movant, Kevin Darnell Wilson, on January 16, 2001. For the reasons set forth below, this motion is **DENIED**. The Clerk is **ORDERED** to enter judgment dismissing this civil action with prejudice.

### BACKGROUND

Movant, Kevin Darnell Wilson, was convicted of carjacking, in violation of 18 U.S.C. section 2119(2), and of using a firearm during a crime of violence, in violation of 18 U.S.C. section 924(c). Following trial, Wilson discharged his trial counsel, Alexander Woloshansky, and proceeded to sentencing pro se. Wilson then appealed his convictions and sentence to the Seventh Circuit, where Asheesh Agarwal (an attorney appointed by the Seventh Circuit) represented him. The Seventh Circuit affirmed Wilson's convictions and sentence in an unpublished opinion, *United States v. Wilson*, No. 99–1695, 2000 WL 197913 (7th Cir. Feb.9, 2000). Wilson has now filed a section 2255 motion, followed that up with his supporting memorandum filed on February 2, 2001, the Government has responded, and Wilson has replied.

### DISCUSSION

According to the evidence at trial, the facts of this case are briefly as follows: A botched carjacking occurred in Gary, Indiana in December 1997 when a Pontiac Parisienne driven by Lakesha Wade was stopped by another vehicle containing three men. Two of the men got out, and one ordered Wade, at gunpoint, to exit her

car. The men failed to commandeer the Pontiac (they could not get it started) and Wade was shot in the arm by one of the men during the encounter. Wade ran for help as her sister (Lasonia Williams), who lived nearby, watched some of the action. Frustrated because they could not get the Pontiac going, the two men jumped back in their car (a third man stayed in the car during the crime) and fled.

A police dispatch went out, and a Gary officer spotted the carjackers' car and trailed it until it crashed into another vehicle. After the crash, the three men got out of the car and took off on foot. The Gary officer, Officer Donald, who recognized Wilson from a previous incident, pursued him on foot. During the chase, Donald saw Wilson toss a gun away. Donald picked up the gun and caught Wilson, and the rest is history. Wilson was charged with carjacking and using a firearm during a crime of violence, Wade and Williams identified Wilson as the shooter, and ballistic tests showed that the gun Wilson ditched had fired a bullet found at the scene. After a jury trial, Wilson was convicted of carjacking and using a firearm during a crime of violence.

■ In his motion and supporting legal memorandum, Wilson makes a number of arguments previously rejected by the Seventh Circuit in Wilson's direct appeal. While the Government argues that Wilson is precluded from rearguing these issues because the Seventh Circuit has already decided them, the Court exercises its discretion to consider these arguments raised in the motion and supporting memorandum because Wilson, in his reply, alleges that his attorney on appeal erred in failing to drop these arguments from the direct appeal so that Wilson could bring them on collateral attack. *See, e.g., United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.1991) (providing that a district court may reexamine in collateral proceedings an issue

previously decided by the Seventh Circuit during direct appeal if "there is some good reason for reexamining it"). To the extent Wilson in his reply alleges that he is entitled to relief (other than the Court reexamining the aforementioned issues raised in his original motion and supporting memorandum and previously rejected in the direct appeal) as a result of his appellate attorney's ineffectiveness, the Court finds that these arguments have been waived because they were first raised in Wilson's reply; any such arguments were not mentioned in, and could not be liberally construed from, Wilson's original motion and supporting memorandum. *See, e.g., United States v. Keith,* Nos. 96 C 8461, 87 CR 874–2, 2000 WL 198448, at *4 (N.D.Ill. Feb.11, 2000) (rejecting as waived a section 2255 petitioner's arguments first raised in his reply); *United States v. Joiner,* 847 F.Supp. 604, 606–607 (N.D.Ill.1994), *aff'd,* No. 94–2386, 1996 WL 89218 (7th Cir. Mar.1, 1996).

Accordingly, the Court now considers the arguments of Wilson's original section 2255 motion and supporting memorandum without regard to any previous Seventh Circuit rulings on these matters during the direct appeal.

■ The bulk of Wilson's motion consists of a number of different reasons why he believes Alexander Woloshansky, his trial attorney, was ineffective. Because counsel is presumed effective, a petitioner bears a heavy burden in proving that his attorney rendered ineffective assistance. *United States v. Guerrero,* 938 F.2d 725, 727 (7th Cir.1991). A conviction will be reversed only if the petitioner satisfies the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this test, the defendant must show 1) that the attorney's representation fell below an objective standard of reasonableness (performance prong), and

2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong). *Dugan v. United States*, 18 F.3d 460, 463–64 (7th Cir.1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

Wilson's first ineffective assistance claim is that Woloshansky failed to sufficiently impeach Wade and Williams, through the testimony of other witnesses or otherwise, regarding inconsistencies in their identifications. Wilson claims that Woloshansky did not exploit at trial the fact that Williams had earlier identified Thomas Hightower as one of the men involved in the crime, even though Hightower turned out to be innocent. Wilson also argues that Woloshansky did not sufficiently develop the fact that Wade did not remember seeing the shooter wearing a red hood, which Wilson apparently had on when he was apprehended by Officer Donald. Finally, Wilson argues that Wade's testimony at trial contradicted an earlier statement in which she identified the shooter as a man wearing a black and white hat which was not, at trial, connected to Wilson.

■ After having reviewed the trial transcripts and the rest of the record in this case, the Court finds that, even assuming Woloshansky was deficient in these three respects, Wilson's ineffective assistance claim must fail because he has failed to satisfy the prejudice prong of the *Strickland* test. Based on the strength of the Government's evidence at trial, the Court finds that there is not a reasonable probability that the result of the proceedings would have been different even assuming Woloshansky was deficient as claimed by Wilson. Indeed, with the police having observed Wilson fleeing the crashed getaway car and ditching the gun, the only defense that could be advanced by pursuing the issues Wilson claims Woloshansky failed to raise at trial is that while Wilson was involved in the carjacking, he did not himself shoot Wade. Such a defense does not present a reasonable probability of a different outcome because, after review of the Government's evidence at trial, the Court finds Wilson would have still been found guilty of carjacking and using a firearm during a crime of violence under the Government's aiding and abetting theory. *See* Jury Inst. Nos. 22–23 (instructing the jury that Wilson could be convicted through an aiding and abetting theory); *see also United States v. Woods*, 148 F.3d 843, 848 (7th Cir.1998); *Wright v. United States*, 139 F.3d 551, 552 (7th Cir. 1998) (explaining that to sustain a conviction, including an 18 U.S.C. section 924(c) conviction post-*Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Government need only prove knowledge of the crime, intent to further it, and some act of help by the defendant). Neither would correction of Woloshansky's alleged deficiencies reasonably lead to a different result at sentencing because of the strength of the Government's evidence that Wilson was the shooter, including the fact that the gun which did the shooting was discarded by Wilson during the chase.

Wilson having failed to show a reasonable probability that the outcome would have been different even assuming Woloshansky was deficient in the alleged respects, the Court finds this ineffective assistance claim meritless. *See, e.g., Melvin v. United States*, 78 F.3d 327, 329 (7th Cir.1996) (explaining that a court need not consider the performance prong of the *Strickland* test if the prejudice prong has not been met).

■ Wilson's next ineffective assistance claim is that Woloshansky failed to object to what Wilson claims to be FBI

Special Agent Timothy Campbell's improper bolstering of Wade's testimony and his improper vouching for her credibility. Improper bolstering or vouching occurs when a personal opinion is expressed about a witness' credibility or when it is implied that facts not before the jury lend a witness credibility. *United States v. Cornett,* 232 F.3d 570, 575 (7th Cir.2000). Upon review of the trial transcripts, the Court first finds that Campbell's testimony was an invited response to Wilson's attack (through Woloshansky) on the failure of the FBI to conduct a more extensive forensic analysis of the evidence. In this regard, the Court notes that Wilson has not alleged that Woloshansky was ineffective in his cross-examination that opened the door to Campbell's testimony. However, even assuming Woloshansky was ineffective in this regard, the Court finds that Campbell's testimony did not constitute improper vouching or bolstering because he did not express a personal opinion as to Wade's credibility nor imply that evidence not before the jury supported a finding that Wilson was guilty. *Id.* Because no improper vouching or bolstering occurred, Wilson has failed to meet both the performance prong and the prejudice prong with his argument that Woloshansky was ineffective in failing to object to Campbell's testimony. *See, e.g., Dugan,* 18 F.3d at 463–64.

■ Wilson's third ineffective assistance claim is his argument that Woloshansky was ineffective for not seeking out and reviewing police reports and laboratory reports of hair sample analysis showing that Wilson did not wear the black and white hat, which Wilson claims prove he was not the shooter. The Court rejects this argument for two reasons.

First, Wilson has failed to show that any such police or laboratory reports of hair sample analysis exist. Indeed, Special Agent Campbell, the supervising agent in charge of evidence gathering in this case, testified at trial that nobody examined the black and white hat to see if it contained any loose hairs, and he also testified the cap was never subjected to hair sample analysis. (Trial Tr., Vol. 3, at 237.) Accordingly, Woloshansky cannot be ineffective for failing to seek out and review police reports and laboratory reports that did not exist. Because Wilson has provided the Court with nothing more than unsupported allegations contradicted by the record, the Court rejects his argument without the need for an evidentiary hearing on this matter. *See, e.g., Prewitt v. United States,* 83 F.3d 812, 819 (7th Cir. 1996) ("[I]t is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions."); *Barkauskas v. Lane,* 946 F.2d 1292, 1295 (7th Cir.1991) (explaining that a petitioner establishing prejudice must present actual evidence of exculpatory testimony that counsel allegedly overlooked); *Aleman v. United States,* 878 F.2d 1009, 1012–13 (7th Cir.1989) (explaining that no evidentiary hearing is required when a petitioner fails to demonstrate that he had actual proof of his allegations).

Second, even assuming such hair sample analysis reports exist confirming that Wilson did not wear the black and white knit cap, the Court still fails to see how introduction of such evidence at trial would establish a reasonable probability that the result of the proceedings would have been different. *Dugan,* 18 F.3d at 463–64. Indeed, as this Court just explained, the defense that Wilson, while in on the carjacking, was not actually the shooter is not a defense presenting a reasonable probability that the outcome would be different in any respect. Based on the strength of the Government's evidence, Wilson still

would have been convicted under an aiding and abetting theory. Neither would correction of Woloshansky's alleged deficiencies reasonably lead to a lesser sentence because of the strength of the Government's evidence that Wilson was the shooter, including the fact that the gun which did the shooting was discarded by Wilson during the chase.

For his fourth claim that Woloshansky was ineffective, Wilson argues that Woloshansky should have reviewed Special Agent Campbell's grand jury testimony, interviewed Campbell, and then called him as a defense witness, all for the purpose of impeaching Officer Donald's testimony at trial that Donald did not shoot at Wilson while chasing him down following the botched carjacking. According to Wilson, reviewing the grand jury testimony and interviewing Campbell would have revealed Campbell's knowledge that Donald had earlier stated that he did shoot at Wilson during the chase. Having Campbell testify to this effect, according to Wilson, would prove that Donald lied under oath at trial, thus impeaching Donald's credibility as a witness for the prosecution.

■ Wilson is correct in suggesting that the use of contradictory testimony is a valid method of impeachment. *United States v. Payne*, 102 F.3d 289, 294 (7th Cir.1996); *United States v. Kozinski*, 16 F.3d 795, 805 (7th Cir.1994). The rules regarding impeachment by contradiction, however, maintain important limitations. The collateral issue rule is one such limitation. The collateral issue rule provides that "one may not impeach by contradiction regarding collateral or irrelevant matters." *Id.* A matter is collateral if it could not have been introduced into evidence for any purpose other than contradiction. *Payne*, 102 F.3d at 294; *Kozinski*, 16 F.3d at 806. Put another way, "one may not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission." *Payne*, 102 F.3d at 294.

■ Applying this law to the instant facts, even assuming Campbell would have testified that Donald had earlier stated that he shot at Wilson during the chase, the Court fails to see how such testimony would have been relevant to the central issues of the case—whether Wilson participated in the carjacking and whether he used or carried a firearm during a crime of violence. *Payne*, 102 F.3d at 294–95; *United States v. Lloyd*, 71 F.3d 1256, 1268 (7th Cir.1995). Thus, this testimony or other evidence to this effect would have been offered only for the sake of contradicting Donald's testimony that he did not shoot at Wilson, and as such would have been collateral and inadmissible. *Id.* Because the evidence Wilson claims Woloshansky would have turned up from a review of grand jury testimony and an interview with Campbell would have been inadmissible, the Court finds Wilson has met neither the performance nor the prejudice prong of the required ineffectiveness showing. *Dugan*, 18 F.3d at 463–64. The Court reaches this determination without the need for an evidentiary hearing. *See, e.g., Pittman v. Warden, Pontiac Correctional Ctr.*, 960 F.2d 688, 691 (7th Cir. 1992) (explaining that a section 2255 petitioner is not entitled to an evidentiary hearing if he does not allege facts that if proven would entitle him to relief).

To the extent Wilson alleges that Woloshansky was ineffective in failing to review any other materials containing "potentially exculpatory" information, (Def. Mem., at 14), this argument is rejected because Wilson has failed to identify the nature of any such information or how it would have helped him. *See, e.g., Prewitt*, 83 F.3d at 819 ("[I]t is the rule of this Court that in order for a hearing to be

granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions."); *Barkauskas*, 946 F.2d at 1295 (explaining that a petitioner establishing prejudice must present actual evidence of exculpatory testimony that counsel allegedly overlooked); *Aleman*, 878 F.2d at 1012–13 (explaining that no evidentiary hearing is required when a petitioner fails to demonstrate that he has actual proof of his allegations).

▪ Wilson's fifth try at showing Woloshansky ineffective is his allegation that Woloshansky failed to interview and call at trial a variety of other witnesses. However, because he has failed to describe the content of the witnesses' proposed testimony or how such testimony could possibly have affected the outcome of the trial, the Court rejects this argument without an evidentiary hearing. *See, e.g., Donovan v. United States*, Nos. 95–2744, 95–2426, 1996 WL 735591, at *6 (7th Cir. Dec.19, 1996) (affirming the dismissal without a hearing of a petition arguing that counsel failed to interview and present witnesses because the petitioner failed to describe the content of the proposed testimony); *see also Prewitt*, 83 F.3d at 819 ("[I]t is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions."); *Brown v. McGinnis*, 922 F.2d 425, 428 (7th Cir.1991) (explaining that to convince a court that counsel's decision in failing to call a witness was prejudicial, a petitioner "must make a comprehensive showing of what the potential witness' testimony would have been and how it would have produced a different result"); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.1991); *United States v. Jean*, No. 97 C 2796, 1997 WL

417804, at *3 (N.D.Ill. July 22, 1997) (both explaining that a petitioner "cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim").

▪ Wilson's last argument that Woloshansky was ineffective is his claim that Woloshansky prevented him from testifying on his own behalf at trial. However, because Wilson has given no indication as to what his testimony would have been or how it could possibly have affected the outcome of the trial, the Court rejects this argument without an evidentiary hearing. *See, e.g., Donovan*, 1996 WL 735591, at *5–*6 (affirming the denial of a section 2255 petitioner's motion without an evidentiary hearing because *Strickland's* prejudice prong was not met by the petitioner's bare suggestion that the jury would have acquitted him had he testified); *Underwood v. Clark*, 939 F.2d 473, 475–76 (7th Cir. 1991) (holding that, because the "my lawyer wouldn't let me testify" argument is too easy to make, a petitioner's bare-bones assertion that his right to testify was denied by his attorney is insufficient to require an evidentiary hearing); *see also Levine v.. United States*, 25 F.Supp.2d 905, 914 (N.D.Ind.1998); *United States v. Saadeh*, Nos. 97 C 2798, 92 CR 102–2, 1997 WL 391974, at *5–*6 (N.D.Ill. July 10, 1997); *United States v. McNeal*, Nos. 93 CR 979–1, 96 C 7445, 1997 WL 208398, at *4 (N.D.Ill. Apr.22, 1997) (all rejecting, without an evidentiary hearing, section 2255 petitioners' arguments that their counsel denied them the right to testify because the petitioners failed to include specifics as to what their testimony would have been).

Wilson's final argument in his section 2255 motion and supporting memorandum is his argument that this Court refused to appoint him a new attorney after he dis-

charged Woloshansky following trial in a hearing before this Court. In this regard, Wilson claims he did not knowingly and voluntary waive his right to counsel for sentencing.

 After reviewing the record in this case, including but not limited to the entirety of the tape of the April 15, 1998, hearing in which Wilson discharged Woloshansky,[1] the Court finds that Wilson knowingly and voluntarily waived his right to counsel at sentencing. Indeed, he persisted in his efforts to discharge Woloshansky even after this Court warned him he would not be given another attorney and despite this Court's admonitions concerning the dangers of self-representation. Based upon Wilson's representations made in open court, this Court found his desires to discharge Woloshansky, waive his right to counsel, and represent himself were knowing and voluntary. Wilson's instant argument that his prior actions were not knowing and voluntary is supported by nothing more than conclusory allegations, an insufficient showing for this Court to grant Wilson an evidentiary hearing on this issue. *See, e.g., United States v. Roth,* 860 F.2d 1382, 1387 (7th Cir.1988) (explaining that a "judge is entitled to hold a defendant to statements made in open court and need not give him a hearing so that he may more readily contradict himself"); *see also Prewitt,* 83 F.3d at 819 (reiterating that a section 2255 petitioner is not entitled to an evidentiary hearing on his claims without a specific and detailed affidavit with actual proof going beyond mere allegations); *Aleman,* 878 F.2d at 1012 ("Mere unsupported allegations cannot sustain a petitioner's request for a hearing."); *Barry v. United States,* 528 F.2d 1094, 1101 (7th Cir.1976) (noting that to obtain a hearing, "the petition must be accompanied by a specific and detailed affidavit"). Wilson's argument that his waiver

of counsel at sentencing was not knowing and voluntary is rejected.

Because it plainly appears from the face of Wilson's section 2255 motion, his supporting memorandum, and the prior proceedings in this case that he is not entitled to relief on any of his claims, the Court **DENIES** his motion with prejudice without the need for an evidentiary hearing. 28 U.S.C. § 2255; Rule 8, Rules Governing Section 2255 Proceedings.

*CONCLUSION*

For the reasons set forth above, the Motion Under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, is **DENIED.** The Clerk is **ORDERED** to enter judgment dismissing this civil action with prejudice.

---

1. To date, no transcript of this hearing has been prepared.